State *v.* Rhoades.

---

THE STATE OF NEVADA, APPELLANT, *v.* HENRY A. RHOADES *et als.*, RESPONDENTS.

STATE TREASURER'S BOND — MONEY RECEIVED DURING FORMER TERM — PRESUMPTIONS. In a suit on the official bond of a State Treasurer, given for his second term of office: *Held,* that whatever money be received in his official capacity during his first term, in the absence of proof that he had wasted or misapplied it, was presumably paid over to himself as his own successor, and that the sureties on such bond were liable for the safe-keeping thereof.

LIABILITY OF STATE TREASURER'S SURETIES FOR "SPECIAL DEPOSITS." All special deposits paid into the state treasury under the provisions of the Act of 1867, for the conditional purchase of state lands, (Stats. 1867, 166, sec. 5) are received by the State Treasurer in his official capacity; and the sureties on his official bond are liable therefor, as for other moneys.

QUALIFIED PROPERTY OF STATE IN "SPECIAL DEPOSITS" IN STATE TREASURY. Though the state may not have the absolute, present right of property in the

State *v.* Rhoades.

"special deposits" paid into the state treasury under the provisions of the land act of 1867, (Stats. 1867, 166, sec. 5) it has the right of present possession and custody, coupled with a contingent interest, and may maintain an action therefor.

PLEADING—EVIDENCE NOT OBJECTIONABLE BECAUSE COMPLAINT NOT PARTICULAR ENOUGH.  Where a complaint against the sureties of a State Treasurer alleged a conversion of money belonging to his office, and moneys of the state, to the extent of $106,432.88, and that no portion of the same was delivered to his successor :  *Held*, that though such a pleading might be obnoxious to a demurrer, or motion for greater particularity, no objection to evidence sustaining the facts so pleaded could be made upon any such ground.

ACTION ON CONTRACT BY PARTY HAVING INTEREST IN ITS PERFORMANCE—DAMAGES.  A party with whom a contract is made, and who has an interest in its performance, can recover the amount of damages sustained by its non-performance.

ACTION AGAINST STATE TREASURER'S SURETIES FOR "SPECIAL DEPOSITS"—MEASURE OF DAMAGES.  In a suit against the sureties of a State Treasurer for the loss of "special deposits" paid in under the Act of 1867, (Stats. 1867, 166, sec. 5) the measure of damages is the amount of the deposits, unless a non-approval of the land locations for which the deposits were made, or an actual repayment to or release by the depositor, or something equivalent thereto, is shown in mitigation.

APPEAL from the District Court of the Second Judicial District, Ormsby County.

This was an action by the state against Henry A. Rhoades, administrator to the estate of Eben Rhoades, deceased, late state treasurer, and twenty-eight other defendants, who were sureties on the official bond of said Rhoades, deceased, as such treasurer. The action was commenced on March 19th, 1870.  A former appeal in the same case will be found, reported under the same title, in 6 Nev. 352.  After the remittitur from that appeal was sent down, the cause came up again for trial at the August term, 1871, of the district court, and resulted in a verdict and judgment for defendants.  A motion for a new trial having been denied, the plaintiff took this appeal.

The facts, necessary for an understanding of the decision, are stated in the opinions.

*L. A. Buckner*, Attorney General, and *A. C. Ellis*, for Appellant.

As to the error. of the court below in excluding any evidence relating to the special deposits, our views were presented at length upon the oral argument. But it is .contended that there is no law making the state responsible to the depositor for the moneys so deposited with the treasurer. This we deny. The duties imposed by the law in this connection, (Stats. 1867, 166, Sec. 5) are all upon the treasurer. They are matters pertaining to his office. He is required to keep an account of the moneys so received upon his books, and as treasurer, to return the moneys to the person entitled thereto, if from any cause the purchase cannot be completed. But the money is absolutely the state's after deposit, provided the purchase can be completed; and in any event, the treasurer must either carry the money to the proper fund account, or otherwise dispose of it according to law; that is to say, he or his successor must pay it over to the person entitled thereto, in case of no purchase, and in case of purchase to carry the money to the proper fund. It is his duty to turn over to his successor in office all books, papers, property. and money *pertaining to his office.*

*Mesick & Wood* for Respondents.

I. The burden of proof was on the plaintiff to satisfy the jury of the truth of the allegation in its complaint, to the effect that the defalcation occurred in respect of moneys had and received by Rhoades as state treasurer, subsequent to the thirtieth day. of January, A.D. 1867, and converted to his own use prior to the ninth day of September, 1869, belonging to the state, &c. This the state failed to prove, except through the mediun of a presumption that the money was actually in the treasury which the accounts indicated should be there. As a matter of proof, no one could tell what money was in the treasury at any particular time, or when the defalcation occurred. The testimony shows, as far as it shows anything on the subject, that it occurred prior to the thirtieth of January, 1867, when the bond in suit was given; and if it be not plain that the entire defalcation occurred prior to that date, it is certain from the evidence that a very large proportion of it occurred before then; and what proportion, if any, occurred subsequently, there was no testimony to show. The jury was justified in coming to the con-

clusion that most if not all of the defalcation complained of occurred prior to the thirtieth of January, 1867, and that if any part occurred subsequent to that date, it was impossible to tell from the evidence what part.

II. The plaintiff was permitted to show what portion of the special deposits became the property of the state by sales of lands being perfected.    The only moneys which were excluded from the consideration of the jury, were those deposited on applications for the purchase of lands, which were not shown to have been acted upon by the state.    Money in that state could, in no sense, be the property of the plaintiff.    The treasurer held the money as the property of the depositor, until the state should render him an answer to his application, establishing a bargain between the parties and binding on both parties.    It seems clear that if the state had no property in the money, it could lose nothing by a misappropriation of it ; and having lost nothing, could recover nothing from any one on account of the misappropriation ; nor was the state responsible to the depositor for the safe keeping of this money.    It had not agreed to be so responsible in specific terms, according to any law or contract appearing. The state had only said to those wishing to purchase lands : " If you will make an application and a deposit of earnest money, we will consider your application."    Nor is there any implied obligation on the part of the state to be responsible for the money, or to refund it in case of its loss.    The depositor is the only person who could maintain an action for the loss or misappropriation of the money, before there was any determination whether the application to purchase would or would not be accepted.    And if so, then *non constat,* but that the depositors have all collected their money from the administrator of the estate of the treasurer, Rhoades.

III. Again, the pleadings did not warrant a recovery of the amount of these special deposits from the defendants, nor the admission of the evidence offered in relation thereto, for the reason that the complaint was not sufficiently specific to cover the case, and the plaintiff would not make it so by amendment.    *Goulet* v. *Asseler,* 22 N. Y. 225.

[Many other points were discussed by counsel ; but as they were not passed on by the court, they are omitted.]

By the Court, GARBER, J. :

The defendants are the administrator and sureties of the former treasurer of this state. The complaint sets forth the bond, which is conditioned : " That the said treasurer shall well, truly, and faithfully perform and discharge the duties of treasurer of the State of Nevada, as required by law, as well those which may be required of him by any law now existing, as those which may be required by any law enacted subsequently to the execution of this bond ; and shall deliver to his successor in office all the books, papers, money, vouchers, sureties, evidences of debt, and effects belonging to his said office."

In determining the extent of the liability of the defendants, we must be governed wholly by the terms of the contract sued on. The law on this subject is well stated in *Thompson* v. *Board of Trustees,* 30 Ill. 99. There the defense to an action of debt, on a similar bond, was, that certain funds deposited by the treasurer had been stolen. The Court, overruling this defense on the ground that he was an insurer of the funds, say : " In no sense is this a case of bailment. The liability of the treasurer arises out of his official bond. He has made by that bond an express contract with the trustees, that he will keep safely the moneys which shall come to his hands. It is so ' nominated in the bond,' when that is read in the light of the statute prescribing his duties, and considerations of public policy forbid that he should be permitted to avail of any extraneous fact outside of the condition of the bond. The treasurer well knew and understood the contract he had entered into, and the extent of the obligation he had voluntarily incurred, and he has obtained all he contracted for—the possession of the office, with the emoluments attached to it. We think there is no principle on which the defense can be sustained, the contract being absolute, without any condition express or implied. In these days of remorseless peculation upon the public 'by its functionaries—indeed, at all times—public policy demands that depositaries of the public money should be held to the most rigid accountability, within the terms and scope of their covenants."

Whatever money Eben Rhoades received, in his official capacity,

during the term previous to that for which this bond was given, in the absence of proof that he had wasted or misapplied it during his first term, was presumably in his hands at the expiration thereof, ready to be paid to his successor.    And he is to be regarded as his own successor, and to have received, in his new official capacity, what it was his duty to pay in his old.    7 Jones, (Law) 382.

His contract was to deliver to his successor all the money belonging to his said office.    All special deposits, made and receipted for under section five of the statute of 1867, (p. 166) constituted a portion of the money belonging to said office.    Such moneys are received by the treasurer in his official capacity.    His only right to keep them is by virtue of his office ; and to that right his successor, as such, succeeds.    It may be that the state has not the absolute, present right of property in these deposits, but she has the right of present possession and custody, coupled with a contingent interest. The interest of the depositor is equally contingent—a right to a return of the deposit on the happening, or rather on the non-fulfillment, of a specified condition.    The money is pledged upon condition that it shall be returned if the purchase cannot be completed. Both the pledger and pledgee have a qualified, but neither of them an absolute, property in the deposit.    The pledger's property is conditional, and depends upon the non-approval of the location, &c. ; and so, too, is that of the pledgee, which depends upon her ability to convey the land.    (2 Black Com. 396.)

In order to protect both these interests, it was eminently proper that the money should be committed to the custody of the chosen officer of the state for the time being, and it was for the state alone to dictate the rights and duties of the custodian.    The defendants have contracted with the state for the faithful performance of these duties, and one of the most important of them was the delivery of these deposits to the successor of Eben Rhoades.    Without the custody of these moneys, his successor could not " issue his ordinary receipt, and transfer the amount to its proper fund account, or refund the deposit to the person entitled, taking receipt therefor, &c."

The language " moneys belonging to an office," is certainly broad enough to embrace deposits, the possession and control of which is

essential to the proper performance of the duties of that office—to comprehend as well moneys held in pledge by the state for her own security, as any other funds directed by law to be kept by her treasurer—and it cannot have been contemplated that, on the approval of a location, the state should be compelled to issue a patent to the purchaser, in the expectation of a voluntary restoration of the deposit by the outgoing treasurer, as the only alternative to a suit for its recovery; or that, on its non-approval, the depositor, instead of obtaining his money by a return of the deposit receipt to the state treasury, should be compelled to hunt up the ex-official or proceed against his bondsmen.  The plaintiff should have been permitted to prove the whole amount of special deposits received by Eben Rhoades, as directly tending to establish the breach of contract alleged in the complaint.  The complaint, in terms, alleges a conversion of moneys belonging to the office of said Rhoades, and of moneys of the state to the extent of $106,432.88; and that no portion of said sum was delivered to his successor in office.  If the complaint is defective in this particular, the defect consists in the manner of alleging the fact of a failure to deliver these deposits, and not in the absence of any allegation of such fact.  Such a pleading may be obnoxious to a demurrer or a motion for greater particularity; but an objection to evidence sustaining the fact so pleaded should not be sustained.  The question on the admission of the evidence is not whether the fact is stated with sufficient particularity.  Here the evidence was not even objected to on that ground.  The objection was confined to the point that the moneys on special deposit did not belong to the state.  But the defendants were in no position to raise any question as to the ownership of this money.  If it should turn out to belong to the depositors, the state would be honorably, if not legally, bound to refund it.  And the state had contracted that it should always remain in the custody of her treasurer, in order so to enable her to restore it to the depositor, or to appropriate it to her own use, as the contingency might happen.  Surely, the party with whom a contract is made, and who has an interest in its performance, can recover the amount of damage sustained by its non-performance.  The measure of damage here is the amount of the deposits—unless a non-approval, followed

by an actual payment to or release by the depositors, or something equivalent, is shown in mitigation.

The judgment and order appealed from are reversed, and the cause remanded for a new trial. ·

By WHITMAN, J., dissenting:

The contract of respondent was for the faithful performance, by treasurer Rhoades, of the duties of his office as such treasurer, as the same were defined by law at the date of the bond, or might thereafter be regulated.

In 1867, the legislature passed an act, in which occurs the following section: "Sec. 5. Upon the written application of any person to the register for the location of lands which such person may desire to purchase from the state, accompanied by a certificate of the state treasurer, that said person has made special deposit in his office of the purchase-money for said lands, the register shall include the same in the list of selections for the month. And the state treasurer is hereby authorized to receive, on special deposit, all sums so tendered, and give receipts therefor; and he shall keep a separate account thereof on his books, and said moneys shall not be used or appropriated for any purpose whatever while upon his books as a special deposit; but when the contemplated entry can be completed, in whole or in part, upon return of the deposit receipts, the treasurer shall issue his ordinary receipt for the amount necessary to effect the purchase, and transfer the amount to its proper fund account. If, from the non-approval of the location, or other cause, the whole or any portion of said deposit cannot be applied to the payment for lands originally entered, then, upon return of the deposit receipt, the treasurer shall refund the proportionate, or whole amount, of such deposit to the person entitled thereto, as such person may elect, taking receipt therefor." Stats. 1867, 166.

This language seems to me so entirely plain, as to require no comment. Still, it may not be amiss to call attention to the specially salient points, that the state treasurer is not commanded in usual language, but simply authorized to receive the money as the money of the applicant, giving a special receipt therefor; that the same is

29

not put into the treasury, nor carried on the books as money belonging to the state, nor allowed to be used or appropriated in any manner, until upon completion of the entry of the land and surrender of the special receipt, one issues in ordinary form ; and the treasurer receives the money for the first time as treasurer, and passes it as the money of the state into its vaults. I entirely fail to comprehend how any such transaction comes within the purview of the duties of state treasurer, as such.

At the trial, appellant was allowed to show the amount of money coming into the hands of Rhoades under this law, which absolutely belonged to the state ; but was refused the opportunity of showing any other sum, or the whole amount received thereunder. This ruling the majority of the court pronounces error ; to me it seems correct. The contract was to secure against malfeasance, as treasurer of state funds—not as banker or bailee of the money of A, B or C.

The state is now seeking to hold the bondsmen of Rhoades for moneys which do not at present belong to it, and may never do so. In case the selection of land is not approved, the applicant may withdraw his money. It would undoubtedly be competent in every case for the legislature to permit the citizen to rescind his contract before its completion ; and thus is presented the anomaly, if such claim be allowed, of making the bondsmen practically, though indirectly, liable to private citizens for their stolen moneys.

It is said that this is correct, because the state would be legally held, if it would be sued, to reimburse the parties losers. Admit the proposition morally sound, but legally doubtful ; and still I cannot see how the result reached, either necessarily or logically, follows. The state may be held to such course, but it cannot so hold the bondsmen, unless such was their contract. Rhoades may perhaps have been so far the agent of the state in this transaction that it will be holden for his acts ; but he was, in pursuance of a duty foreign to that of treasurer, or which could constitutionally be imposed on him as such. Of course Rhoades was liable, because he accepted the trust, which he might have properly refused, as not belonging to that capacity in which he had agreed to act ; but his acceptance could, in no wise, alter the position of his bondsmen, who

have the right to claim their legal status, and to refuse to be placed on any other.    No doubt, a great wrong has been done the people of this state; but that is, in no manner, compensated by injustice to such thereof as may happen to be upon the bond in suit.    This, in my opinion, would be the case, if they are to be held as demanded.

Many assignments of error appear in the record, some or all of which may be good; but as the case goes back for a new trial, my opinion thereon would be of no effect; so I content myself with dissenting from the opinion rendered, passing entirely the other errors suggested.