[No. 1245.]
## MOYNAHAN v. PRENTISS.

1. PRACTICE—TROVER—DEMAND.
In an action in trover where the defendant lawfully came into possession of the property, it is necessary to allege and prove a demand for its return.
2. PRACTICE—DECEIT.
An action for deceit and false representations cannot be had, unless the false representations were made to and acted on by plaintiff, or some one authorized to act for him.
3. PARTNERSHIP—AUTHORITY OF MEMBER.
A member of a nontrading partnership such as a law firm, cannot lawfully transfer partnership property without the express authority of the other member or members of the firm.
4. EVIDENCE—MARKET VALUE.
To establish the measure of damages for the conversion of the stock of a company, proof must be offered of its market value, if it have a market value. If it have no market value, proof may be made of special transactions in this particular stock, as sales and options and prices at which it was sold or optioned.

*Appeal from the District Court of El Paso County.*

Messrs. CARPENTER & McBIRD, for appellant.

Messrs. BROOKS & ARMIT, for appellee.

BISSELL, J., delivered the opinion of the court.

The peculiar tenure by which Prentiss held title to an interest in a certificate of stock of the Phil Sheridan Mining & Milling Company, and the opportunity which Moynahan had to make a little money by the sale of it gave rise to this suit.

The judgment which was entered may be an equitable adjustment of the controversy, but it is sustained by neither the pleadings nor the proof.

On the 1st of January, 1894, Owen Prentiss and J. P. Dunleavy were doing business as lawyers in Cripple Creek. They did business together, but whether the terms and conditions of their connection and the agreement between them resulted in the formation of a law partnership is undeterminable, but as we look at it quite immaterial. One or the other or both of them seem to have been employed by the company, and as the result of services rendered received a certificate for twenty-five thousand shares of stock of the company which was issued in terms and form to Owen Prentiss and J. P. Dunleavy. The interest of neither was expressed, and presumptively and without proof they would be the owners each of one half. The evidence, however, shows that under the agreement between them, the interest of whatever might be earned or received was divided into thirds, and that Prentiss was the owner of two thirds of the certificate. This is conceded by Dunleavy and was testified to by both of them. When this stock was issued it was either delivered to Prentiss and by him turned over to Dunleavy to hold, or he got it at the time and thereafter retained it. There is some little evidence to the point that the accounts between the parties were not entirely settled and that Prentiss was indebted to Dunleavy, and that this was the real reason why the stock was given to him. Whether he held it as security or for any other reason in no manner bears on the question at issue, but these facts show the situation. Whatever connection they had was severed shortly afterwards and in May, 1894. Later, and in 1895, there was some little movement in the stock because of an effort on the part of some parties to obtain control of the whole or of the majority of it. This movement resulted in the sale of several blocks and the procurement of options on others. Proof was offered of what was paid by those who bought and of the price at which the stock was optioned, and the figure at which Moynahan sold his.

At this time Moynahan was the secretary of the company and interested in these negotiations and sales. Having knowledge of this outstanding certificate he corresponded with Dunleavy with reference to its purchase. In this connection it may be stated that Moynahan prior to this time knew that Prentiss had an interest in the stock to the extent of two thirds of it as appears from his letter of May 8. At all events he wrote to Dunleavy about selling it, stated the price which he got for his, which was put at three fourths of a cent and the price at which others sold their stock which varied from three fourths of a cent to one cent a share. In this letter he undertook to induce Dunleavy to transfer the certificate to O. R. Burchard, who would pay $200 for it. To induce Dunleavy to go into the scheme and transfer it, he stated that Prentiss was in a deal whereby the certificate would be sold to other parties or in some way disposed of and Dunleavy left out in the cold. Dunleavy was advised to conceal the negotiations from Prentiss in order to protect his own interest, to send the stock at once, and to wire him immediately as to what was done, as he was about to be removed from the office of secretary and he would not then be able to transfer the stock on the books and perfect the title in the purchaser. He was also told to see that the stock was properly indorsed to evidence title in the transferee. Acting on this suggestion Dunleavy indorsed the stock with his own name and that of Prentiss, sent it to Burchard by express C. O. D. and presumably got the money. When Prentiss learned that the stock had been indorsed and transferred he started this suit. During the progress of the trial evidence was offered to show the price at which the stock had been sold in order to establish its value and the measure of damages. Some was likewise offered which tended to show that Moynahan had received five cents per share for his stock, and that various amounts of it had been sold or optioned at that price. We have now stated all the matters which are requisite to the decision although many details are omitted and some matters are left untouched which

are the subject of errors assigned. Our conclusions however, render it unnecessary to state or suggest any other matters of fact or any of those which were the subject-matter of objection during the progress of the trial.

The suit which was begun seems to have been conceived as an action for false representations or deceit. The gravamen of the complaint is undoubtedly deceit. The pleader evidently intended to state such a cause of action, inserted allegations essential to the statement of it, and prayed a recovery based on it. In pursuit of this theory the representations and statements made by Moynahan to Dunleavy were fully amplified, and probably if they afforded Prentiss a cause of action are sufficiently set up. The pleader also averred matters which might by a liberal construction be taken to be the statement of a cause of action in trover. It was alleged that Moynahan fraudulently obtained possession of the stock, that the plaintiff had demanded possession of his interest in the certificate, and that both the possession and an admission of his rights were refused; that Moynahan claimed to own the whole of it, and had sold it to the plaintiff's damage, and then laid the *ad damnum*. It may be the pleading is a little inartificial as one in trover, but we can spell out of it enough to maintain a suit of that description if the proof supported it. The trouble however, is, that although the plaintiff alleged a demand, he did not prove one. This is evidently fatal, because Dunleavy had an interest in the certificate which he might lawfully and rightfully transfer to Moynahan, and by the transfer Moynahan came into the lawful possession of it, and to establish a right to the possession and maintain trover the plaintiff must allege and prove demand. We are not called on to determine whether trover will lie for an undivided interest in a certificate of stock under these circumstances, because the question is not raised by counsel; the case was tried on no such theory, nor was the evidence directed to that end. The pleading was not aptly drawn for the purpose, and our suggestions respecting it are more by way of analysis of the

complaint than as a determination of what the rights of the parties on this basis might be.

It is very evident the plaintiff could not maintain a suit for deceit, for none was practised on him. No interview ever took place between Prentiss and Moynahan with reference to the sale or transfer of the stock, and Prentiss did nothing because of any statements or representations which Moynahan had made. We are quite unable to see how an action of deceit can be maintained by Prentiss because of the representations which were made to Dunleavy when the representations in no manner led to a transfer of Prentiss's interest by one having authority to act. *Lindsey v. Lindsey,* 34 Miss. 432; *Dingle v. Trask,* 7 Colo. Ct. of App. 16.

It is probably true, if a misrepresentation is made to one member of a firm, whereby the firm's interest in particular property is sold at an inadequate price or under circumstances which result in injury to the firm, an action would lie for the deceit, although it was practised on only one member of the partnership. Such is not this case. The plaintiff denied the transfer by the firm, denied the transfer of his interest, asserted the want of authority on the part of his partner to dispose of it, asserted the title was in himself and that what his partner did, as a matter of law, was inoperative to transfer his title to Moynahan. Of course he had the right to affirm the transaction, set up the sale by Moynahan, and hold Moynahan responsible for his acts if he was able to sustain his case by proper proof. The testimony may be taken to establish want of authority in Dunleavy to transfer the certificate and the legal insufficiency of the indorsement to convey Prentiss's interest to Moynahan. Dunleavy had no direct authority to indorse it. There has been very considerable discussion by both counsel with respect to the power of a partner to deal with the property of the firm. We do not regard the question as determinative of the issue presented by the pleadings or the case made by the proofs, nor do we see how Dunleavy had authority to indorse the

certificate when he did.  In the first place this was not a
trading partnership.  It was not organized for the purpose
of dealing in stocks, but, if at all, for the transaction of law
business.  Such partnerships have been a matter of much
consideration by the courts and they are in harmony on the
question that a member of a nontrading partnership must
have express authority in order to sell the interest of the
members of the firm.  The liability of one partner for the
acts and dealings of the copartner, without consent or know-
ledge, is one purely of agency.  If the authority is denied
and not established by proof, one who deals with the seller
with knowledge of the firm interest does not thereby obtain
a partnership obligation.  If the party dealing with the firm
has knowledge of the limitations of the agreement between
the parties he would of course be bound.  If he is with-
out knowledge he must be able to establish the existence of
the authority to do the act by proof of the nature of the
business carried on by the firm, and the authority must
as a matter of law be necessarily and reasonably implied
from the nature of the business which the firm transacts.
*Irwin v. Williar*, 110  U. S. 499; *Smith v. Sloan*, 37 Wis. 285;
*Blaker v. Sands*, 29 Kan. 551; *Halstead v. Shepard*, 23  Ala.
558; *Vance v. Campbell et al.*, 27 Tenn. 523.

The proof clearly demonstrates Moynahan's knowledge of
the want of authority.  He knew the firm, if it was a firm,
was a law partnership and engaged in the transaction of a
law business which did not carry with it the right to deal in
certificates of stock issued to the individual members.  It is
evident from the tone and language of his letter of May 8,
he had specific knowledge that Prentiss had an interest in
the stock and his knowledge respecting Dunleavy's author-
ity to transfer the certificate without Prentiss's indorsement
appears from a suggestion in the letter to Dunleavy to see
that it was properly indorsed.  He had been theretofore
advised by Prentiss and as secretary of the company had
knowledge of the form of the certificate and in the letter
stated his exact knowledge of the extent of Prentiss's claim,

and may not therefore be taken in this transaction to have been a *bona fide* purchaser without knowledge. Had he been entirely without this information and simply known that Dunleavy held the certificate for twenty-five thousand shares, and had sought to buy it at a named sum, and had received the certificate running to the two persons, but apparently bearing a joint indorsement, the question would have been somewhat different. In this connection we may be permitted to suggest that such inspection would have disclosed to any person familiar with business affairs that probably the certificate was indorsed by the same person at the same time, since the indorsements are evidently in the same handwriting Disregarding these suggestions, the facts which were in Moynahan's possession take him entirely out of the category of a *bona fide* purchaser and he is chargeable not only with the knowledge which he had, but all legitimate and legal presumptions must be resolved against him. In addition to all this at the time Dunleavy attempted to transfer the stock the firm had been dissolved for more than a year. If it be true that during the continuance of the firm as a nontrading one, no partner has under the law of agency the right to sell and dispose of securities which the firm may hold, *a fortiori*, after dissolution, whatever individual powers the partner may have possessed during the life of the firm cease to exist.

On the conclusion of the trial the court rendered judgment that the plaintiff was entitled to recover sixteen thousand six hundred and sixty-six shares of the capital stock of the Phil Sheridan Mining & Milling Company, or in lieu of it, the sum of $873, and costs. Manifestly this judgment could not be rendered on the pleadings or on any construction of them. The suit for false representations could not be maintained, and if the complaint was held to be good in trover no judgment could be entered on it for the want of proof. Neither the proof nor the pleadings warranted a judgment in that form. An alternative judgment might be entered in a suit in replevin. If Prentiss had filed his bill on proof that the stock had passed out of Moynahan's possession

whereby he was unable to perform, the court in order to
settle the rights of the parties might have entered judgment
for the damages, to wit: for the value of the stock at the
time of the conversion. Such was not the case made.

A good deal of stress is laid on the objections made to
the proof offered respecting the specific sales of stock, and
the price at which it was optioned. This was produced to
establish value. The question is not seriously presented,
but it will remain an important inquiry on any subsequent
trial. We are not inclined to agree with either counsel about
the rule which must prevail. It has been over and over
again determined that in order to establish the measure of
damages for the conversion of the stock of a company, proof
must be offered of its market value. How that may be done,
how the question is to be decided, and what testimony is
legitimate to establish it has been frequently the subject of
adjudication. Most of the cases, however, concern stocks
which have an actual or an apparent market value. About
such stocks there is no difficulty because they have an easily
ascertainable value, and the knowledge of it is in the posses-
sion of many persons. Where it is the stock of a company
which does not own a developed property, but yet is the
holder of property of some future, if not immediate present
worth, there is no such thing as a market value because the
stock is not dealt in either by brokers or by individuals,
except in particular instances. Under such circumstances,
it is of course quite impossible to establish the market value
in the way and by the means by which this matter is usually
settled when the value of well known stocks like the stocks
of railroads, surface transportation companies, lighting cor-
porations, water carriers or similar enterprises is the subject
of investigation. For this reason we are of the opinion that
in order to determine the market value the ordinary means
and methods may be resorted to if practicable, but if such
proof cannot be made the parties may show transactions in
this particular stock, sales, options, and prices at which
stocks have been sold or optioned and therefrom either the
court or the jury may determine its actual value.

What has already been suggested has demonstrated that the judgment may not stand. Under the peculiar circumstances we are impelled to direct a reversal with an order to the court below to permit the plaintiff to amend his pleading to state a cause of action as he may be advised, and on the incoming of an answer and the framing of an issue, the case may be again tried.

The judgment will be reversed.

<em>Reversed.</em>