[No. 2546]

# R. S. PAGE AND MARIE OLIVE PAGE, RESPONDENTS, *v*. MARK WALSER AND FRANK MARGRAVE, APPELLANTS. [213 Pac. 107]

1. PARTIES—CORPORATION OWNING SHARES OF STOCK HELD NOT INDISPENSABLE PARTY TO AN ACTION BROUGHT BY PLAINTIFFS, CLAIMING INTEREST IN SUCH STOCK, SOLD ON EXECUTION THROUGH DEFENDANT'S NONPERFORMANCE OF CONTRACT.

     Where an attorney contracted to establish, by litigation, or otherwise, at his own expense, plaintiffs' interest in several named corporations in return for the assignment to him by plaintiffs of two-thirds of such interest, and the attorney so manipulated plaintiffs' stock in these corporations that it was transferred into stock of another corporation. which was later sold on execution and lost to plaintiffs, *held*, even though plaintiffs' interest in the stock sold under execution appeared doubtful and uncertain. the action being grounded on contract and plaintiffs being directly interested in its performance, plaintiffs may bring action without joining the other corporation; such other corporation not being an indispensable party to the action.

2. ATTORNEY AND CLIENT—PLAINTIFFS HELD ENTITLED TO RECOVER DAMAGES FOR SHARES OF STOCK SOLD ON EXECUTION THROUGH NONPERFORMANCE OF CONTRACT, EVEN THOUGH SHARES BECAME PROPERTY OF CORPORATION.

     Where an attorney agreed to establish by litigation or otherwise at his own expense plaintiffs' interest in several named corporations in return for the assignment to him by plaintiffs of two-thirds of such interest. and the attorney so manipulated plaintiffs' interest in such corporations that it was transferred into stock of another corporation, which was later sold on execution and wholly lost to plaintiffs, *held* the fact that the stock became in contemplation of law the sole property of such other corporation does not preclude plaintiffs from maintaining an action to recover damages for nonperformance of the contract.

3. DAMAGES—GRANTING DAMAGES NOT ASKED IN COMPLAINT HELD PROPER UNDER STATUTE.

     Where the relief demanded in complaint was for the recovery of shares of stock in a mining corporation or its value, no damages being asked. *held* the granting of damages was proper, being consistent with the complaint and embraced within the issue under Rev. Laws, 5241, providing that the relief granted to plaintiff where there is no answer shall not exceed relief demanded in complaint, but in any other case the court may grant him any relief consistent with the case made by complaint and embraced within the issue.

4. ATTORNEY AND CLIENT—ATTORNEY CANNOT WITHDRAW OR ABANDON EXECUTORY CONTRACT WITH CLIENT WITHOUT CONSENT OF CLIENT.

Where an attorney contracted to establish by litigation or otherwise clients' interest in named corporations in return for two-thirds interest in the proceeds thereof, and the attorney so manipulated clients' stock in such corporations that it was lost to clients, the attorney thereafter could not withdraw without clients' consent and put himself in a position antagonistic to clients by becoming an officer of such corporation in which through his own manipulations the clients' interests had become lodged.

5. CORPORATIONS—SHARES OF STOCK TRANSFERRED TO A CORPORATION HELD SOLE PROPERTY OF CORPORATION WITHOUT REGARD TO CONTRACT BETWEEN PRIOR OWNER AND HIS ATTORNEY WITH RESPECT TO SUCH SHARES.

Where stock of a mining corporation belonging to plaintiffs and defendants was issued to another corporation as consideration for the conveyance of latter's property, such stock became the property of the latter corporation, in application of the rule that real or personal property and choses in action, conveyed to or acquired by a corporation, are in law the property of the corporation as a distinct legal entity, and not in any sense the property of its stockholders, and a contract between plaintiffs and defendants, setting forth ownership of such stock, would not affect corporation's title thereto.

6. EVIDENCE—EVIDENCE OF POTENTIAL VALUE OF MINING GROUND HELD TOO UNCERTAIN, SPECULATIVE, AND CONTINGENT TO PROVE VALUE OF SHARES OF STOCK, ALTHOUGH ADMISSIBLE.

Evidence of the potential value of mining ground to prove the value of stock in a mining corporation, though an element to be considered in absence of market value, *held* to be so uncertain, speculative, and contingent that no court or jury could reasonably draw any conclusion of the real value of such stock.

7. EVIDENCE—PROOF OF VALUE OF SHARES OF STOCK HAVING NO MARKET VALUE SHOWN BY PARTICULAR TRANSACTIONS.

Where shares of stock have no market value, proof of transactions in the particular stock and the prices at which such stock has been sold may be given to show its actual value.

8. EVIDENCE—SALES OF STOCK HELD NOT BONA FIDE AND NOT COMPETENT TO PROVE VALUE.

Sale of stock in a mining corporation at a specified price per share *held* to be the result of prearranged plan, and was not bona fide, and therefore not competent to show the actual value of shares of stock of such corporation.

Points decided

9. DAMAGES—NOMINAL DAMAGES ALLOWED, WHERE EVIDENCE INSUF-
FICIENT TO SHOW ACTUAL VALUE OF SHARES OF STOCK SOLD AT
FORCED SALE.

Where evidence was insufficient to establish the actual value
of mining stock sold under execution, *held*, in the absence of
evidence to show actual damage for its forced sale, judgment
should be for nominal damages.

10. ATTORNEY AND CLIENT—LAYMAN, HAVING INTEREST IN CONTRACT
BETWEEN ATTORNEY AND CLIENT, HELD NOT LIABLE TO CLIENT
AS ATTORNEY FOR NONPERFORMANCE OF CONTRACT.

Though an attorney under a contract to carry certain trans-
actions to a conclusion cannot withdraw or abandon his ser-
vice without client's consent, this rule does not apply to a
layman who has taken an interest in such contract through
the attorney; the fact that the layman knew of relations
between the attorney and client not being sufficient to make
layman accountable to client as an attorney.

11. ATTORNEY AND CLIENT—ATTORNEY CANNOT DELEGATE CONTRACT
TO PERFORM SERVICES TO ANOTHER.

The employment of an attorney implies a personal confidence
and trust which he cannot delegate to another.

12. ATTORNEY AND CLIENT—ATTORNEY LIABLE FOR DAMAGES PROXI-
MATELY CAUSED BY NONPERFORMANCE OF CONTRACT.

An attorney is liable for damages proximately caused by
his failure to perform his contract to establish by litigation
or otherwise client's interest in named corporation in return
for the assignment to him by client of two-thirds of such
interest.

13. APPEAL AND ERROR—SUPREME COURT WILL NOT SUBSTITUTE OWN
JUDGMENT FOR TRIAL COURT'S WHERE EVIDENCE CONFLICTING
AND DECISION OF TRIAL COURT NOT CLEARLY WRONG.

The supreme court will not substitute its own judgment for
that of the trial court, where substantial conflict in the evi-
dence, and where it does not appear that judgment of trial
court is wrong.

14. ATTORNEY AND CLIENT—LAYMAN MAY PARTICIPATE IN THE CON-
SIDERATION FOR A CONTRACT BETWEEN ATTORNEY AND CLIENT,
THOUGH NOT LIABLE AS ATTORNEY TO THE CLIENT.

Though a layman who is given an interest in a contract for
contingent fee made between an attorney and client by the
attorney is not in the relation of attorney to the client, and is
not responsible for losses sustained because of failure of attor-
ney to perform his contract, he is not precluded from partici-
pating in the consideration, if any, of such contract.

APPEAL from Second Judicial District Court, Washoe
County; *Mark R. Averill,* Judge.

Action by R. S. Page and another against Mark
Walser and another. From a judgment for plaintiffs

and order denying motion for new trial, defendants appeal. **Reversed in part and affirmed in part. Petition for rehearing denied** (COLEMAN, J., dissenting).

*Cheney, Price, Hawkins & Lunsford,* for Appellants:

Taken as a whole, the pleadings show that plaintiffs are not entitled to recover or to maintain this action. Under such circumstances a motion for judgment on the pleadings, or an objection to any evidence, is proper. There can be no good reason for proceeding to trial in an action where, admitting all the facts charged as true, the plaintiff is not entitled to judgment. Kelly v. Kreiss, 9 Pac. 129–130.

The legal effect of a pleading may be tested either upon demurrer or in an appropriate instance by a motion for judgment on the pleadings. Vickers v. Vickers, 45 Nev. 278.

In Goodrich v. Board of County Commissioners, 27 Pac. 1106, after defendants' demurrer was overruled, defendants objected to any evidence being received, assigning as one ground that the petition did not state facts sufficient to constitute a cause of action. The objection was sustained and judgment entered for the defendants; upon error, affirmed.

It is the court's duty, at any time before trial, when it becomes satisfied that an erroneous ruling has been made with respect to the sufficiency of a pleading, or other similar matter, to promptly set aside the order and correct the error. The fact that the order was made by another judge is a matter of no consequence whatever. Ft. Dearborn Lodge v. Kline, 3 N. E. 272; Dowie v. Priddle, 75 N. E. 243, 245; Reilly v. Perkins, 56 Pac. 734; Russell v. Louisville & N. R. Co., 25 S. E. 99; Blalock v. Condon, 99 Pac. 733; Sherbruner v. Strawn, 34 Pac. 405; 31 Cyc. 84, 350.

If it should be claimed that this is a stockholder's suit or action brought to enforce a corporate right which the officers of the corporation have refused or neglected to prosecute, the action cannot be maintained by the plaintiffs. The corporation itself is an indispensable party

defendant to a stockholder's action for the purpose of remedying a wrong which the corporation itself should have remedied. This rule is due to the fact that a similar possible future suit by the corporation is thereby prevented, the rights of the corporation are duly ascertained, and the remedy made effectual against the corporation as well as others. McNeely v. Dupont, 263 Fed. 252; 2 Cook on Stock and Stockholders, sec. 738.

Individual stockholders cannot sue the officers at law for damages on the theory that they are entitled to damages because the mismanagement has rendered their stock of less value or worthless, for the injury is, in law, not to them individually, but to the corporation— to the stockholders collectively. Humphreys v. McKissock, 140 U. S. 304, 312; 3 Clark & Marshall, Private Corporations, p. 2284.

A shareholder cannot sue individually for damages caused by wrongful acts impairing the value of his shares through the invasion of the corporate or collective rights. Wells v. Dane, 63 Atl. 324.

Cogswell v. Bull, 39 Cal. 320, was an action to recover of the defendants, officers of a corporation, and to compel said defendants to account for and refund certain moneys of the corporation alleged to have been misappropriated by the defendants. The demurrer to the complaint, upon the ground that it did not state facts sufficient to constitute a cause of action, was sustained upon the grounds that the action should have been instituted in the name of the corporation; that the plaintiff as a stockholder had no cause of action against the defendants; the demurrer was sustained without leave to plaintiff to amend. Upon appeal, affirmed.

The complaint does not state facts sufficient to constitute a cause of action. Neilsen v. Rebard, 43 Nev. 274.

In the absence of a market for stocks, proof may be made of the price paid for them in a bona-fide transaction; but it is otherwise as to the price paid for exceptional reasons or at a remote period, though the latter objection is not forceful if there has been but little

variation in the dividends paid. Contracts for options may also be shown. 13 Ency. Ev., pp. 526–528, 541–542.

*Hoyt, Norcross, Thatcher, Woodburn & Henley,* for Respondents:

To hold that appellants could take from respondents their property and under the absolute power of attorney in fact change the form of that property into the stock of another corporation, and thus relieve themselves from direct accountability for the violation, not only of contractual obligations but a trust relation, would be a travesty upon justice. Courts, fortunately, have not rendered themselves powerless to grant relief in cases of this kind. Upon the contrary, the courts disregard corporate entity whenever necessary to grant justice to individuals. Fletcher, Cyc. Corp., vol. 1, sec. 42, et seq.; Linn v. Lone Timber Co., 196 Fed. 593, 181 Fed. 545; U. S. v. Milwaukee R. T. Co., 142 Fed. 247, 255; Carigus v. Int. Agr. Co., 159 N. Y. App. Div. 880; Armour v. Bennett's Sons, 123 Fed. 56; Bennett v. Minott, 44 Pac. 288, 39 Pac. 997; Higgins v. Calif. Co., 81 Pac. 1070.

The doctrine of separate existence may be carried too far, and it is properly disregarded in cases of fraud, circumvention of contract, state or public wrong, monopoly, and like instances. Fletcher, Cyc. Corp., vol. 1, sec. 42, p. 57; U. S. v. Milwaukee R. T. Co., 142 Fed. 247, 255.

Modern cases, sustained by the best text-writers, have repudiated the fiction of ideal legal entity to a duly formed corporation in all cases where it has been insisted on as a protection to fraud or illegal transactions. First Nat. Bank v. F. C. Trebein Co., 52 N. E. 387.

In equity, the relationship between the shareholders is recognized whenever this becomes necessary to the attainment of justice. Mor. Priv. Corp. 227; Railway Co. v. Miller, 51 N. W. 982; Gas Co. v. West, 50 Iowa, 16; Booth v. Brunce, 33 N. Y. 139; Bennett v. Minott, 44 Pac. 288.

Even if the corporation be regarded as the real debtor, and the appellant as only its agent, yet, inasmuch as he was guilty of the fraud perpetrated upon appellee, the law will hold him liable. Donnovan v. Purtell, 75 N. E. 334; State v. Standard Oil Co., 30 N. E. 279.

By the Court, SANDERS, J.:

This case has twice reached this court; once by way of an original proceeding in prohibition, instituted by the present appellants to have the lower court prohibited from proceeding to try the case upon its merits by reason of misjoinder of causes of action, in violation of an express inhibition of the civil practice act. On rehearing, the demurrer to the petition for the writ was sustained and the proceeding dismissed, for the reason that, while separate causes of action were stated in the complaint, they were a part of one cause of action. 42 Nev. 111, 173 Pac. 1149, 190 Pac. 492. The case was again appealed from an order denying the present appellants' application for a change of venue, which said order was affirmed. 43 Nev. 422, 187 Pac. 509. The case is now before us on appeal from a joint and several judgment, and also from an order denying and overruling the defendants' joint and separate motion made for a new trial.

The pleadings as amended purport to narrow the issues to but two causes of action, instead of five, as contained in the original complaint. The case was tried without the assistance of a jury, and the court decided the facts to be as stated in the first nineteen paragraphs of the complaint. Its decision is supplemented by formal findings of fact and conclusions of law, upon which the joint and several judgment, sounding in damages, was rendered in favor of plaintiffs and against the defendants, and each of them, for the sum of $10,200, with interest on $833.33 thereof from the 11th day of March, 1913, and for costs of suit, taxed at $307.55.

While it is obvious from the pleadings and course of the litigation that the object most sought to be accomplished by this action was to recover judgment against the defendants for 281,250 shares of the capital stock of the Nevada Packard Mines Company, or its value, to wit, $140,625, together with the sum of $25,312.50 received as dividends thereon, by reason of the findings and conclusions, limiting and confining plaintiffs' recovery to a judgment, sounding in damages, for the loss of plaintiffs' interest in 281,000 shares of the capital stock of the Limerick Consolidated Mines Company, all questions of law and fact that bear upon the issue as to the capital stock of the Nevada Packard Mines Company disappear on this appeal.

Referring to the parties as they stood in the court below, it is conceded that the action is grounded upon two agreements. The first or primary agreement bears date on December 21, 1912, between the defendant Mark Walser and plaintiffs. The second agreement, dated December 27, 1912, is between the two defendants, in which the primary agreement is referred to and made a part. We shall not recite the agreements, but for clearness will state their pertinent terms.

The defendant Walser agreed with the Pages, as an attorney at law, that in consideration of their sale and assignment outright to him of an undivided two-thirds interest of plaintiffs, vested or prospective, in their stock holdings and claims of whatever nature in the corporations named in the contract, to wit, the Indian Consolidated Mines Company of South Dakota, the Indian Consolidated Mines Company of Nevada, the Limerick Mining Company, and the Limerick Townsite Company, he would commence and maintain at his own expense, all actions at law necessary to clear the title to the interests that the Pages (plaintiffs) may have or be entitled to in said corporations, and defend at his own expense, and without charge, all actions that might be brought against them because of their connections with

said corporations, and that he would in addition advance and pay all moneys required to protect the property, free it from liens, and protect the other claimants; it being understood that the Pages were to have an undivided one-third interest in and to everything recovered from said companies. On December 27, 1912, the defendant Walser, by and with the consent of plaintiffs, agreed with his codefendant Margrave that, in consideration of his advancing to him $150 to carry the matters set forth in his contract with the Pages to a successful ending, he would sell and assign, and did sell and assign, to Margrave an undivided one-half interest in his part of the contract with the Pages, being one-third of the whole.

The district court found the facts to be, in substance, as follows: That at or about the time of the execution of the agreement of date December 21, 1912, plaintiffs delivered to the defendant Walser all their stocks in the several corporations mentioned in said agreement, being of the amount of 689,000 shares, including 250,000 shares of the capital stock of the Indian Consolidated Mines Company of South Dakota, found to be the successor in interest of the other corporations named in said agreement; that defendant so used and manipulated said stocks collectively as to cause all rights and interests represented thereby to be transformed into, and become all the stock, property, rights and interests of the North Rochester Mines Company; that on March 11, 1913, the North Rochester Mines Company agreed to convey, and did convey, to the Limerick Consolidated Mines Company all its property, consisting of a group of mining claims, situated in the Rochester Mining District, Humboldt County, in consideration for which conveyance the Limerick Consolidated Mines Company agreed to issue, and did issue, in the name of the North Rochester Mines Company, 300,000 shares of its capital stock, and paid as a part of said consideration $2,500 in money, which said sum was, upon demand of defendants, paid direct to them; that on March 11, 1913, the defendant Walser, acting for the North Rochester Company and plaintiffs and defendants, entered into an

agreement with the Limerick Consolidated Mines Company to pool with all the promotion stock of the corporation the stock issued to the North Rochester Mines Company until the 15th day of September, 1913; that plaintiffs and defendants, by virtue of the agreement of date December 21, 1912, were the owners of said 281,000 shares of the capital stock of the Limerick Consolidated Mines Company; that defendants, on the expiration of the pool agreement, failed to withdraw, or cause to be withdrawn, said stock, but permitted it to remain with the trustee, in whose hands it was attached, and in July, 1914, after notice to defendants, was sold under execution to satisfy a debt against the North Rochester Mines Company, and that by reason of said execution sale the interests of plaintiffs in said stock became thereby wholly lost; that plaintiffs had no knowledge of the specific terms of the pool agreement, and no knowledge that the stock had been levied upon or sold until February, 1917; that at the time the stock was so issued, pooled and sold, as aforesaid, it was of the value of 10 cents per share, and that plaintiffs were damaged by reason of its sale and the loss of their interests therein in the sum of $9,333.33; that defendants did not notify plaintiffs of, nor account to them for, the said $2,500 paid to defendants on account of the consideration for the conveyance of the property of the North Rochester Mines Company to the Limerick Consolidated Mines Company on or about the 11th day of March, 1913, and plaintiffs did not learn that any such payment had ever been made, or that defendants had received any such sum on account of such sale until on or about the......day of February, 1917.

That thirty-two assignments of error, covering a record of 1,100 pages by a printed brief, may, for convenience, be grouped under three headings: First, that the judgment is against law; second, that the evidence does not support the findings, nor the findings the judgment; third, that the joint and several judgment is erroneous.

**1, 2.** The first specification of error is that the court erred in overruling the demurrer to the complaint, the

defendants' motion for judgment on the pleadings, and their objection to the admission of any testimony or evidence on behalf of plaintiffs. The exceptions to these rulings were preserved throughout the trial and are made the principal and leading assignment of errors. It is strongly argued that the complaint does not state facts sufficient to constitute a cause of action in that it appears that plaintiffs' cause of action is grounded upon an alleged wrong or injury resulting from the sale of 281,000 shares of the capital stock of the Limerick Consolidated Mines Company, issued to the North Rochester Mines Company in consideration of the latter's conveyance to the former of all its property, rights, title, and interest in and to a group of mining claims located and situate in the Rochester Mining District, Humboldt County; that said stock so issued was, upon the......day of July, 1914, sold under execution to satisfy a judgment of a third party against said North Rochester Mines Company, and, if any cause of action is stated, it is one in favor of said North Rochester Mines Company, and not the plaintiffs; that said corporation is an indispensable party, and is not made a party to the action.

This position can only be attributed to counsel's misconception of the nature of the action. There would be force to the contention if the action were or could be said to be derivative in its nature. Plaintiffs do not sue in their representative capacity as stockholders; neither does the complaint contain sufficient allegations to support an action as one brought by an individual stockholder in his representative capacity for the restoration of stock lost to the corporation through the neglect of the defendants, or for the wrongful diversion of money of the corporation. From an analysis of the pleadings, made with no little difficulty, the plaintiffs have alleged that they had an interest in the stock sold under execution by virtue of the contract of December 21, 1912. It is true their interest appears to be doubtful and uncertain, yet, the action being grounded upon

Opinion of the Court—Sanders, J.

a contract, and plaintiffs shown to have an interest in its performance, they are entitled to recover damages sustained by its nonperformance. State v. Rhoades, 7 Nev. 434. It is argued further in this connection that, since it appears affirmatively from the complaint that the stock sold was in fact the property of the North Rochester Mines Company, the case comes within the rule that real or personal property conveyed to or acquired by a corporation is in law the property of the corporation as a distinct legal entity, and the stock involved was in no sense the property of plaintiffs, but that of the corporation, and they are in no position to sue in their individual capacity for its loss without making the corporation a party. The difficulty with this position is that defendants close their eyes to the full scope and meaning of their undertaking fixed by their obligation of December 21, 1912, whereby the defendant Walser agreed to ascertain and to establish, by litigation or otherwise, at his own cost and expense, plaintiffs' interests, whatever they may have been, in the several corporations named in the agreement, and to protect the property, free it from liens, and protect it from other claimants. If, as charged in the complaint, plaintiffs' interests as aforesaid were so manipulated by the defendants in furtherance of their undertaking as to be transformed into the stock of the North Rochester Mines Company and into the stock of the Limerick Consolidated Mines Company and wholly lost, plaintiffs could maintain an action for the detriment proximately caused by the defendants' neglect or breach of duty imposed by their obligation, without making the North Rochester Mines Company a party.

3. It is further argued that the only relief demanded by the complaint was to recover judgment against the defendants for a specified number of shares of the capital stock of two corporations, or its value, and no attempt was made to recover damages. It is contended that this state of the pleading brings the case within the facts and law of the case of Nielsen v. Rebard, 43

Nev. 274, 183 Pac. 984. This position is untenable. The relief granted to a plaintiff, where there is no answer, shall not exceed that which he shall have demanded in his complaint; but in any other case the court may grant him any relief consistent with the case made by the complaint and embraced within the issue. Rev. Laws, 5241. We are of the opinion that the relief by way of damages was consistent with the case made by the complaint, and was embraced within the issue. Therefore the case of Neilsen v. Rebard, where it was held that the complaint stated no cause of action, has no application. On the facts alleged in the complaint the district court could not have done otherwise than to overrule the demurrer, the motion for judgment on the pleadings, and the objection to the introduction of any evidence on the part of plaintiffs.

Beyond other legal questions involved, the case presents this situation: The mining companies named in the contract of December 21, 1912, were the outgrowth of a mining boom in the Rochester Mining District. Plaintiffs, husband and wife, two very old people, past 80 years of age, made an investment of $10,000 in 250,000 shares of the capital stock of the Indian Consolidated Mines Company of South Dakota. This corporation was the successor of all the property interests of the other corporations named in their contract with the defendant Walser. R. S. Page was the president of the corporation, and said 250,000 shares of its capital stock was delivered into the possession of the defendant Walser under said contract. Prior to the making of this contract, the North Rochester Mines Company was organized, with a capitalization of 1,000,000 shares, ostensibly for the purpose of taking over all the property rights of the several corporations named in the contract as a method, through the distribution of its stock in the warring factions and claimants to all and parts of the stock and property of the several corporations named in the contract, of settling and harmonizing their differences. This plan of settlement under its then directorate failed of consummation.

When the defendants became interested under their contract, they were made officers and directors of the North Rochester Mines Company with plaintiff R. S. Page, who was its president.  On February 14, 1913, all of said corporations, except the Limerick Townsite Company, transferred and conveyed all their property, rights, titles, and interests in and to a group of mining claims to the North Rochester Mines Company, in consideration of the issuance to a single trustee for each of said companies of 500,000 shares of its treasury stock to be delivered by said trustee to said corporations as their interests might appear.  The Limerick Consolidated Mines Company claimed title to, and was in possession of, some of the mining claims so conveyed to the North Rochester Mines Company.  As a result of its conflicting locations with those of the North Rochester Mines Company, and in settlement thereof, the latter, as found by the trial court, conveyed all its property interests therein to the Limerick Consolidated Mines Company, in consideration for which conveyance it issued to the North Rochester Mines Company 300,000 shares of its capital stock, of which, as found by the trial court, 281,000 shares were deposited in pool for the purpose of creating a market for the stock so pooled.  It is significant that when the stock was delivered under the pool agreement to the trustee named therein, the defendant Walser deposited with the trustee his contract, or a copy thereof, entered into by him with plaintiffs, and notified the trustee, in the form of a letter, that he was the owner of 200,000 shares of the 300,000 so deposited and issued in the name of the North Rochester Mines Company.  The stock, after the expiration of the pool, was attached in the hands of the trustee to secure the payment of a debt for the sum of $440, contracted by the defendants under their authority as officers of the North Rochester Mines Company, of which attachment the defendant Walser had notice.  In July, 1914, the attached stock was sold under execution for said debt, and the Limerick Consolidated Mines Company became the purchaser at

the price of $440, the costs of the action bringing the amount paid up to about $500. The testimony of the two defendants, as witnesses in their own behalf, tends to show that the defendant Margrave, on February 26, 1913, resigned his office in the North Rochester Mines Company, and verbally notified his codefendant and plaintiff R. S. Page that the property of the corporation was of no value, and that the conflicting and complicated affairs of the company were such that he had quit, was through with his undertaking, and had no further interest in the matter. On the same day, the defendant Walser made a written report to the directors of the company, picturing the horrible situation of its affairs, and advised the directors that in his opinion an earnest effort should be made "to sell out all that we own and try and save something for all concerned," stating, in substance, that he had expended $636 in a futile effort to settle and harmonize the numerous differences of the stockholders and claimants to its property, which, in his opinion, was worthless, and, if it should be determined to continue litigation, that some means of raising money must be devised, as he could not and would not advance any more of his own funds, and so notified plaintiffs. The evidence, on the part of defendants, tends to show that Margrave, after his withdrawal from his agreement, became an active agent in bringing about the sale of the property on March 11, 1913. Margrave testified, in substance, that, pursuant to a prearranged agreement between him and the Limerick Consolidated Mines Company, 25,000 shares of its capital stock was issued to him as and for a commission, which, on delivery, was immediately transferred by him to the Associated Mines Development Company for the price of $2,500.

Upon this state of facts the defendants make two contentions: One that, with notice to plaintiffs and for justifiable and sufficient reasons, they terminated their contract of December 21, 1912, and abandoned their undertaking; and the other that, if plaintiffs had any

interest or valid claim to the stock, or any part thereof, sold under execution, such stock was of no value, and no damage resulted to plaintiffs in any manner from its forced sale.

4. It is the contention of the defendant Walser that on February 26 the contract between him and plaintiffs was terminated, and all that he did thereafter was as an officer and employee of the North Rochester Mines Company, and not under and in virtue of his contract with plaintiffs. Generally speaking, an attorney who has been employed generally to conduct legal proceedings enters into an entire contract to conduct them to their termination; and he cannot abandon the service to his client's detriment. Usually he has a right to withdraw with his client's consent; but without such consent withdrawal will only be permitted for justifiable cause. Thornton on Attorneys at Law, sec. 139. The defendant Walser, an experienced attorney, did not bring himself within this well-established rule. Were we so disposed, we might indulge in harsh criticism, even though he acted openly and not deceitfully with his clients. Suffice to say, as long as his contract remained executory he could not consistently appeal to the court to absolve him from his continuous obligation by permitting him to assume an antagonistic attitude towards his clients under cover of the North Rochester Mines Company, into which, by his own manipulations, their interests had become lodged. The case, however, as to the defendant Margrave is different, and will be considered when we reach the discussion of the validity of the joint and several judgment.

The two basic findings in the case are: First, that plaintiffs and defendants were, in virtue of the contract of December 21, 1912, the owners of the 281,000 shares of the capital stock of the Limerick Consolidated Mines Company, issued to the North Rochester Mines Company in consideration for the conveyance of the latter's property; second, that the stock was, at the time of sale under execution, worth 10 cents per

share, and plaintiffs were damaged thereby in the sum of $9,333.33.

5. There is no possible basis for the first finding in law or fact. It is the general rule that real or personal property and choses in action, conveyed to or acquired by a corporation, are in law the property of the corporation as a distinct legal entity, and not in any sense the property of its members or stockholders. 14 C. J., sec. 7, p. 54; 1 Cook on Stock and Stockholders, sec. 6, p. 9. Conceding that plaintiffs and defendants had an uncertain, undefined interest in the several corporations named in the contract, which was so manipulated by the defendant Walser as to be transformed into the North Rochester Mines Company and subsequently converted into the stock issued in its name by the Limerick Consolidated Mines Company, we are unable to see upon what theory it can be legally assumed that the contract entitled or gave the parties any more or better right to claim as owners the entire stock so issued than the corporation itself, its stockholders or creditors. It is true the parties, and particularly the defendant Walser, claimed ownership of the stock under the contract, but this was a matter of conclusion or inference on their part, and gave no facts of any materiality or significance on which to base a finding that plaintiffs and defendants were the owners, in virtue of their contract, of the entire consideration paid for the corporate property. Their interests in the stock were the same after as before the sale and conveyance. As to what interest the parties had in the stock we pass no opinion.

6. Coming to the consideration of the second finding, the evidence leaves no doubt of the fact that at the time of its sale under execution the stock was not worth 10 cents per share, or any certain sum. The Limerick Consolidated Mines Company was not the owner of a developed and producing mine, but it was the holder of certain mining claims, mere prospects, of some future, if not immediate present, worth. But its stock was not dealt in either by brokers or individuals, and

at the time of sale it had no such thing as a market value. To prove its actual or real value, evidence of the potential value of the company's mining ground, then undergoing development, was taken as an element of proof to be considered in ascertaining the actual value of its stock. Conceding, but not deciding, that, in the absence of market value, evidence of the potential value of mining ground may be an element of proof to be considered in ascertaining the value of the stock of a mining corporation, we are of the opinion that plaintiffs' uncertain estimates and calculations of the value of the particular mining claims to prove the actual value of the stock "cannot be considered as reaching the rank of conflicting evidence." "There must be proof of value or evidence of such facts as will warrant a deduction of the value with reasonable certainty." Watt v. Railroad Co., 23 Nev. 154, 44 Pac. 423, 46 Pac. 52, 726, 62 Am. St. Rep. 772. If there was any element of proof of the value of the stock calculated upon the basis of the value of the ground, it was so uncertain, speculative, conjectural, and so highly contingent no court or jury could reasonably and intelligently draw any conclusion as to the real or actual value of the stock of the corporation.

7, 8. It is argued on behalf of plaintiffs that at the time of sale of property interests of the North Rochester Mines Company to the Limerick Consolidated Mines Company the latter was without funds, and to raise the $2,500 in cash necessary to complete the purchase the Associated Mines Development Company purchased 25,000 shares of the treasury stock of the Limerick Consolidated Mines Company, paying therefor 10 cents per share, or $2,500, and that this transaction fixes the actual value of the 281,000 shares at 10 cents per share. Where there is no market value, proof may be given of transactions in the particular stock, and the prices at which the stock has been sold or optioned, to show its actual value. Moynahan v. Prentiss, 10 Colo. App. 295, 51 Pac. 94. The evidence bearing on the transaction

tends to show that the sale of the 25,000 shares of stock at 10 cents per share was the result of a prearranged plan between the Limerick Consolidated Mines Company and the Associated Mines Development Company. The former being without funds, the latter, being, in fact and in truth, the owner of its assets, which had not then been transferred, advanced out of its own treasury the sum of $2,500 with which to buy the particular 25,000 shares, in order that the Limerick Consolidated Mines Company might complete the purchase. In this situation we are of opinion that the sale was not a bona-fide one, and therefore not relevant to show the actual value of the 281,000 shares.

9. Being of opinion that the actual value of the stock sold under execution was not established, and in the absence of evidence to show that plaintiffs sustained any actual damage from its forced sale, the joint and several judgment for the sum of $9,333.33, as damages, must be reduced to that of a nominal sum. 5 Fletcher, Cyc. sec. 3453.

10 -12. The joint and several judgment for the sum of $9,333.33 is erroneous. The evidence bearing thereon, practically without conflict, supports the contention of the defendant Margrave that long prior to the sale of said 281,000 shores of stock he had withdrawn from his agreement to finance his codefendant Walser, and had abandoned his undertaking, and so notified R. S. Page and his codefendant. It is argued on behalf of plaintiffs that, since Margrave took his interest in the contract of December 21, 1912, through Walser, with knowledge of the relationship of attorney and client existing between Walser and the Pages, Margrave, therefore, is in no better position than Walser. This contention is untenable. The employment of an attorney implies a personal confidence and trust which he cannot delegate to another. We do not see how Margrave's mere knowledge of Walser's relations to the Pages obligated or made him accountable to them as their attorney. This

conclusion, however, has no application to the defendant
Walser, who is responsible to plaintiffs for the detri-
ment proximately caused by his failure to perform his
undertaking fixed by his contract with plaintiffs. Lane
v. Starke, 10 Cal. App. 352, 101 Pac. 937. But, as we
are of the opinion that no damage is shown to have
resulted to plaintiffs from the breach by him of his
contract, under the rule, their damage must be confined
to that of a nominal sum. McLellan v. Fuller, Ann. Cas.
1917B, note III, 38.

13, 14. Coming to the consideration of that portion
of the judgment for $833.33, with interest thereon from
March 11, 1913, and treating it as a judgment for money
had and received, we find the evidence quite conflicting.
The court found the fact to be that defendants received
$2,500 in money in addition to the stock consideration
paid for the sale and conveyance of the property of the
North Rochester Mines Company, and defendants failed
to account to plaintiffs for their portion thereof, to wit,
$833.33. There is a radical difference between the wit-
nesses as to how, under what circumstances, and for
what purpose said sum of $2,500 was paid. There being
a substantial conflict in the evidence, and it not appear-
ing that a wrong conclusion was reached, we are not
authorized under the rule to substitute our judgment
for that of the trial court. It does not necessarily fol-
low, because we are of opinion that the evidence fails
to show that the defendant Margrave was in no sense
responsible to plaintiffs for the loss of their entire
interest in the stock confided to the care and skill of the
defendant Walser, that he could not have participated
in the money consideration, if there was such con-
sideration.

Entertaining these views, extended to an embarrass-
ing length, it is ordered: First, that the judgment
against the defendant Frank Margrave, for the sum of
$9,333.33, as damages, be reversed in its entirety; sec-
ond, that the judgment against the defendant Mark

Walser, for the sum of $9,333.33, as damages, be reversed, and the cause remanded to the district court, with directions to render judgment against him for a nominal sum; third, that the joint and several judgment against the defendants, and each of them, for the sum of $833.33, with legal interest from March 11, 1913, be affirmed.

ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.

COLEMAN, J.: I dissent.